## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## SOUTHERN DIVISION

RECEIVED

2015 OCT 28  ⊃ 4: 11

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT OF ALA

| | | |
|---|---|---|
| WELLS FARGO BANK, NATIONAL ASSOCIATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:15-cv-794 |
| SPECALLOY CORPORATION, PANHANDLE IRON & SCRAP, INC., JOSEPH T. DONOVAN, URBAN MINING, LLC, PANHANDLE ROCKY MOUNTAIN CONVERTER RECYCLING, LLC, PANHANDLE-MIDWEST CONVERTER RECYCLING, LLC, PANHANDLE CONVERTER & CORE, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Wells Fargo Bank, National Association ("Lender") hereby states as follows for its complaint against Defendants SpecAlloy Corporation ("SpecAlloy"), Panhandle Iron & Scrap, Inc. ("Panhandle Iron"), Joseph T. Donovan, Urban Mining, LLC, Panhandle Rocky Mountain Converter Recycling, LLC, Panhandle-Midwest Converter Recycling, LLC, and Panhandle Converter & Core, LLC (collectively, the "Guarantors," together with Panhandle Iron and SpecAlloy, the "Defendants"):

1.    Lender is a national banking association with its main office, as set forth in its articles of association, located in South Dakota. Lender is the owner and holder of all loan documents described and referenced herein, and the party entitled to enforce the same.

2.    SpecAlloy is a Florida corporation with its principal place of business located at 868 Murray Road, Dothan, Alabama 36303. SpecAlloy's registered agent for service of process is Harry Grier, 3201 Ross Clark Circle, Dothan, Alabama 36303.

3.    Panhandle Iron is an Alabama Corporation with its principal place of business located at 868 Murray Road, Dothan, Alabama 36303. Panhandle Iron's registered agent for service of process is Lorrie M. Parker, 500 Office Park Drive, Suite 100, Birmingham, Alabama 35223.

4.    Joseph T. Donovan is an adult resident of the State of Alabama. Joseph T. Donovan may be served with process at 868 Murray Road, Dothan, Alabama 36303.

5.    Panhandle Rocky Mountain Converter Recycling, LLC is an Alabama limited liability company. Its registered agent for service of process is Lorrie M. Parker, 500 Office Park Drive, Suite 100, Birmingham, Alabama 35223.

6.    Urban Mining, LLC is an Alabama limited liability company. Its registered agent for service of process is Lorrie M. Parker, 500 Office Park Drive,

2

Suite 100, Birmingham, Alabama 35223.

7.     Panhandle-Midwest Converter Recycling, LLC is an Alabama limited liability company.  Its registered agent for service of process is Lorrie M. Parker, 500 Office Park Drive, Suite 100, Birmingham, Alabama 35223.

8.     Panhandle Converter & Core, LLC is an Alabama limited liability company.  Its registered agent for service of process is Lorrie M. Parker, 500 Office Park Drive, Suite 100, Birmingham, Alabama 35223.

## Jurisdiction and Venue

9.     This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332.  There is diversity between the parties and the amount in controversy exceeds $75,000.

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a).

## Facts

*The SpecAlloy Loan*

11.     On or about July 31, 2013, Lender made a line of credit loan to SpecAlloy in the amount of $2,000,000 (the "Original SpecAlloy Loan") as evidenced by that certain Business Lending Confirmation Letter dated July 31, 2013, made by SpecAlloy payable to Lender in the stated principal amount of $2,000,000 (the "Original SpecAlloy Note").  A true and correct copy of the

Original SpecAlloy Note is attached hereto as **Exhibit "A."**

12.     The Original SpecAlloy Note was a revolving line of credit note, with an availability period extending until July 31, 2014.

13.     In connection with and as an inducement of Lender's making of the Original SpecAlloy Loan to SpecAlloy, Joseph T. Donovan, Panhandle-Midwest Converter Recycling, LLC, and Panhandle Rocky Mountain Converter Recycling, LLC executed those certain Commercial Guaranties dated July 31, 2013 in favor of Lender (the "SpecAlloy Commercial Guaranties").  Pursuant to the SpecAlloy Commercial Guaranties, Joseph T. Donovan, Panhandle-Midwest Converter Recycling, LLC, and Panhandle Rocky Mountain Converter Recycling, LLC guaranteed the payment and performance of all of SpecAlloy's obligations under the Original SpecAlloy Loan.   True and correct copies of the SpecAlloy Commercial Guaranties are attached hereto as collective **Exhibit "B."**

14.     As security for the Original SpecAlloy Loan, and pursuant to the Original SpecAlloy Note, SpecAlloy granted Lender a security interest in all inventory, all accounts, contract rights, chattel paper, general intangibles and other rights to payment of every kind, and all equipment (the "SpecAlloy Collateral").

15.     Lender perfected its interest in the SpecAlloy Collateral by filing that certain UCC-1 Financing Statement with the Florida Secured Transactions Registry on December 6, 2013, as filing number 201300343743 (the "SpecAlloy

4

Financing Statement"). A true and correct copy of the SpecAlloy Financing Statement is attached hereto as **Exhibit "C."**

16. On or about October 2, 2014, Lender increased and renewed the Original SpecAlloy Note, whereby Lender agreed with SpecAlloy to increase the line of credit loan from $2,000,000 to $3,000,000 (the "Second SpecAlloy Loan"), evidenced by that certain Business Lending Confirmation Letter dated October 2, 2014, made by SpecAlloy payable to Lender in the stated principal amount of $3,000,000 (the "Second SpecAlloy Note"). A true and correct copy of the Second SpecAlloy Note is attached hereto as **Exhibit "D."**

17. Pursuant to the Second SpecAlloy Note, the Second SpecAlloy Note "renews, modifies and replaces the Credit previously referred to as account number 3327239334-18 but it shall not be deemed to constitute a novation thereof."

18. The Second SpecAlloy Note was a revolving line of credit note, with an availability period extending until January 1, 2015.

19. In connection with and as an inducement of Lender's making of the Second SpecAlloy Loan to SpecAlloy, Joseph T. Donovan executed that certain "Commercial Guaranty" dated October 2, 2014 in favor of Lender (the "Second SpecAlloy Commercial Guaranty"). Pursuant to the Second SpecAlloy Commercial Guaranty, Joseph T. Donovan guaranteed the payment and performance of all of SpecAlloy's obligations under the Second SpecAlloy Loan

B SCP01 1447312 v3
1039341-000731

and all "past, present and future indebtedness of [SpecAlloy] to Lender." A true and correct copy of the Second SpecAlloy Commercial Guaranty is attached hereto as **Exhibit "E."**

20.     On or about January 27, 2015, Lender renewed the Second SpecAlloy Note (the "Third SpecAlloy Loan"), as evidenced by that certain Business Lending Confirmation Letter dated January 27, 2015, made by SpecAlloy payable to Lender in the stated principal amount of $3,000,000 (the "Third SpecAlloy Note"). A true and correct copy of the Third SpecAlloy Note is attached hereto as **Exhibit "F."**

21.     Pursuant to the Third SpecAlloy Note, the Third SpecAlloy Note "renews, modifies and replaces the Credit previously referred to as account number 3327239334-18 but it shall not be deemed to constitute a novation thereof."

22.     The Third SpecAlloy Note was a revolving line of credit note, with an availability period extending until August 1, 2015. Pursuant to the Third SpecAlloy Note, "[t]he Credit shall mature on August 1, 2015, at which time all unpaid principal, accrued interest, and any other unpaid amounts shall be due and payable in full." The Third SpecAlloy Note incorporates by reference the Wells Fargo Business Lending Disclosure. A true and correct copy of the Wells Fargo Business Lending Disclosure is attached hereto as **Exhibit "G."**

23.     In connection with and as an inducement of Lender's making of the Third SpecAlloy Loan to SpecAlloy, the Guarantors and Panhandle Iron executed

6

those certain "Commercial Guaranties" dated January 27, 2015 in favor of Lender (the "Third SpecAlloy Commercial Guaranties"). Pursuant to the Third SpecAlloy Commercial Guaranties, Panhandle Iron and Guarantors guaranteed the payment and performance of all of SpecAlloy's obligations under the Third SpecAlloy Loan and all "past, present and future indebtedness of [SpecAlloy] to Lender." True and correct copies of the Third SpecAlloy Commercial Guaranties are attached hereto as collective **Exhibit "H."**

24.   On or about July 28, 2015, Lender extended the maturity date of the Third SpecAlloy Loan from August 1, 2015 to September 30, 2015, as evidenced by that certain Extension Notice executed by Lender and SpecAlloy (the "SpecAlloy Extension Agreement"). A true and correct copy of the SpecAlloy Extension Agreement is attached hereto as **Exhibit "I."**

25.   On or about September 23, 2015, Lender informed SpecAlloy, as evidenced by that certain Notice of Nonrenewal (the "SpecAlloy Notice of Nonrenewal"), that Lender did not intend to renew SpecAlloy's line of credit. A true and correct copy of the SpecAlloy Notice of Nonrenewal is attached hereto as **Exhibit "J."**

*The Panhandle Iron Loan*

26.   On or about July 31, 2013, Lender made a line of credit loan to Panhandle Iron in the amount of $750,000 (the "Original Panhandle Iron Loan") as

7

evidenced by that certain Business Lending Confirmation Letter dated July 31, 2013, made by Panhandle Iron payable to Lender in the stated principal amount of $750,000 (the "Original Panhandle Iron Note"). A true and correct copy of the Original Panhandle Iron Note is attached hereto as **Exhibit "K."**

27. The Original Panhandle Iron Note was a revolving line of credit note, with an availability period extending until July 29, 2014.

28. In connection with and as an inducement of Lender's making of the Original Panhandle Iron Loan to Panhandle Iron, Joseph T. Donovan and SpecAlloy executed those certain Commercial Guaranties dated July 31, 2013 in favor of Lender (the "Panhandle Commercial Guaranties"). Pursuant to the Panhandle Commercial Guaranties, Joseph T. Donovan and SpecAlloy guaranteed the payment and performance of all of Panhandle Iron's obligations under the Original Panhandle Iron Loan. True and correct copies of the Panhandle Commercial Guaranties are attached hereto as collective **Exhibit "L."**

29. As security for the Original Panhandle Iron Loan, and pursuant to the Original Panhandle Iron Note, Panhandle Iron granted Lender a security interest in all inventory, all accounts, contract rights, chattel paper, general intangibles and other rights to payment of every kind, and all equipment (the "Panhandle Iron Collateral").

30. Lender perfected its interest in the Panhandle Iron Collateral by filing

8

that certain UCC-1 Financing Statement with the Alabama Secretary of State on August 2, 2013, as filing number B 13-7267834 FS (the "Panhandle Iron Financing Statement"). A true and correct copy of the Panhandle Iron Financing Statement is attached hereto as **Exhibit "M."**

31.   On or about January 27, 2015, Lender renewed the Original Panhandle Iron Note (the "Second Panhandle Iron Loan"), as evidenced by that certain Business Lending Confirmation Letter dated January 27, 2015, made by Panhandle Iron payable to Lender in the stated principal amount of $750,000 (the "Second Panhandle Iron Note"). A true and correct copy of the Second Panhandle Iron Note is attached hereto as **Exhibit "N."**

32.   Pursuant to the Second Panhandle Iron Note, the Second Panhandle Iron Note "renews, modifies and replaces the Credit previously referred to as account number 3327239326-18 but it shall not be deemed to constitute a novation thereof."

33.   The Second Panhandle Iron Note was a revolving line of credit note, with an availability period extending until July 28, 2015. Pursuant to the Second Panhandle Iron Note, "[t]he Credit shall mature on July 28, 2015, at which time all unpaid principal, accrued interest, and any other unpaid amounts shall be due and payable in full." The Second Panhandle Iron Note incorporates by reference the Wells Fargo Business Lending Disclosure.

B SCP01 1447312 v3
1039341-000731

34.    In connection with and as an inducement of Lender's making of the Second Panhandle Iron Loan to Panhandle Iron, SpecAlloy and Joseph T. Donovan executed those certain "Commercial Guaranties" dated January 27, 2015 in favor of Lender (the "Second Panhandle Commercial Guaranties"). Pursuant to the Second Panhandle Commercial Guaranties, SpecAlloy and Joseph T. Donovan guaranteed the payment and performance of all of Panhandle Iron's obligations under the Second Panhandle Iron Loan and all "past, present and future indebtedness of [Panhandle Iron] to Lender." True and correct copies of the Second Panhandle Commercial Guaranties are attached hereto as collective **Exhibit "O."**

35.    On or about July 28, 2015, Lender extended the maturity date of the Second Panhandle Iron Loan from July 28, 2015 to September 26, 2015, as evidenced by that certain Extension Notice entered into between Lender and Panhandle Iron (the "Panhandle Iron Extension Agreement"). A true and correct copy of the Panhandle Iron Extension Agreement is attached hereto as **Exhibit "P."**

36.    On or about September 23, 2015, Lender informed Panhandle Iron, as evidenced by that certain Notice of Nonrenewal (the "Panhandle Iron Notice of Nonrenewal"), that Lender did not intend to renew Panhandle Iron's line of credit. A true and correct copy of the Panhandle Iron Notice of Nonrenewal is attached

10

hereto as **Exhibit "Q."**

37.    The Third SpecAlloy Loan and the Second Panhandle Iron Loan are referred to herein, collectively, as the "Loans."

38.    The Original SpecAlloy Loan, Original SpecAlloy Note, SpecAlloy Commercial Guaranties, Second SpecAlloy Loan, Second SpecAlloy Note, Second SpecAlloy Commercial Guaranty, Third SpecAlloy Loan, Third SpecAlloy Note, Wells Fargo Business Lending Disclosure, Third SpecAlloy Commercial Guaranties, SpecAlloy Collateral, SpecAlloy Financing Statement, SpecAlloy Extension Agreement, SpecAlloy Notice of Nonrenewal, Original Panhandle Iron Loan, Original Panhandle Iron Note, Panhandle Commercial Guaranties, Second Panhandle Iron Loan, Second Panhandle Iron Note, Second Panhandle Commercial Guaranties, Panhandle Iron Collateral, Panhandle Iron Financing Statement, Panhandle Iron Extension Agreement, Panhandle Iron Notice of Nonrenewal, and all other documents evidencing, referring to, relating to, or securing the Loans are referred to herein, collectively, as the "Loan Documents." All capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Loan Documents.

## The Defaults and Outstanding Obligations

39.    Events of Default have occurred and are continuing under the Loan Documents (collectively, the "Events of Default"), including without limitation,

SpecAlloy's, Panhandle Iron's, and Guarantors' failure to pay all amounts due and owing under the Loan Documents. The Third SpecAlloy Note matured by its terms on September 30, 2015, and the Second Panhandle Iron Note matured by its terms on September 26, 2015.

40.   Due to SpecAlloy's and Guarantors' failure to pay the amounts due under the Third SpecAlloy Note, Lender demanded payment of all amounts due by letter to SpecAlloy and Guarantors on October 21, 2015 (the "SpecAlloy Demand Letter"). A true and correct copy of the SpecAlloy Demand Letter is attached hereto as **Exhibit "R."**

41.   Due to Panhandle Iron's, SpecAlloy's, and Joseph T. Donovan's failure to pay the amounts due under the Second Panhandle Iron Note, Lender demanded payment of all amounts due by letter to Panhandle Iron, SpecAlloy, and Joseph T. Donovan on October 21, 2015 (the "Panhandle Iron Demand Letter"). A true and correct copy of the Panhandle Iron Demand Letter is attached hereto as **Exhibit "S."**

42.   SpecAlloy, Panhandle Iron, and Guarantors have failed to cure the Events of Default or otherwise repay the amounts they owe Lender.

43.   As of October 21, 2015, the outstanding indebtedness due under the Third SpecAlloy Note is $3,019,588.02. This debt consists, in part, of $2,991,907.05 in outstanding and unpaid principal, $5,680.97 in accrued and

unpaid interest, $18,000.00 in Field Exam charges, and $4,000.00 in collection charges.

44.     As of October 21, 2015, the outstanding indebtedness due under the Second Panhandle Iron Note is $702,073.72.   This debt consists, in part, of $699,465.78 in outstanding and unpaid principal, $1,607.94 in accrued and unpaid interest, and $1,000.00 in collection charges.

45.     In addition, pursuant to the Loan Documents, SpecAlloy, Panhandle Iron, and Guarantors are obligated to pay Lender all costs it incurs in enforcing its rights in collecting the outstanding indebtedness under the Loan Documents, including but not limited to attorneys' fees, costs of collection, and court costs.

## Count I – Breach of Contract - SpecAlloy

46.     Lender incorporates by reference the allegations set forth above as if set forth fully herein.

47.     The Third SpecAlloy Loan is in default due to, among other things, SpecAlloy's failure to make payments due under the terms of the Third SpecAlloy Note.  The Third SpecAlloy Loan has matured by its terms.

48.     As of October 21, 2015, SpecAlloy owes Lender, under the terms of the Third SpecAlloy Note, the sum of $3,019,588.02 in combined principal, interest, field exam fees, and collection fees, plus reasonable attorneys' fees.

49.     The Third SpecAlloy Loan is fully due and payable based on

13

SpecAlloy's breach and Lender's demand for payment.

50.    SpecAlloy has failed to repay the amounts due and owing under the Third SpecAlloy Loan.

51.    As a result of such failure, Lender has been damaged by SpecAlloy's and Guarantors' failure to repay the amounts owed.

52.    Pursuant to the Loan Documents, Lender is entitled to collect from SpecAlloy its reasonable attorneys' fees and costs incurred in enforcing its rights under the Third SpecAlloy Note.

53.    All conditions precedent to the bringing of this action have been performed by Lender or have otherwise occurred.

**WHEREFORE**, Lender hereby demands judgment against SpecAlloy Corporation for all amounts due and owing under the Third SpecAlloy Note, in an amount not less than $3,019,588.02, together with and including, without limitation, interest accruing at the default rate pursuant to the terms of the Loan Documents, and all attorneys' fees and court costs incurred by Lender in enforcing its rights under the Loan Documents, and all other legal and equitable relief the court deems proper and just.

## Count II - Breach of Contract - Panhandle Iron

54.    Lender incorporates by reference the allegations set forth above as if set forth fully herein.

14

55.    The Second Panhandle Iron Loan is in default due to, among other things, Panhandle Iron's failure to make payments due under the terms of the Second Panhandle Iron Note.  The Second Panhandle Iron Loan has matured by its terms.

56.    As of October 21, 2015, Panhandle Iron owes Lender, under the terms of the Second Panhandle Iron Note, the sum of $702,073.72 in combined principal, interest, and collection fees, plus reasonable attorneys' fees.

57.    The Second Panhandle Iron Loan is fully due and payable based on Panhandle Iron's breach and Lender's demand for payment.

58.    Panhandle Iron has failed to repay the amounts due and owing under the Second Panhandle Iron Loan.

59.    As a result of such failure, Lender has been damaged by Panhandle Iron's failure to repay the amounts owed.

60.    Pursuant to the Loan Documents, Lender is entitled to collect from Panhandle Iron its reasonable attorneys' fees and costs incurred in enforcing its rights under the Second Panhandle Iron Note.

61.    All conditions precedent to the bringing of this action have been performed by Lender or have otherwise occurred.

**WHEREFORE,** Lender hereby demands judgment against Panhandle Iron & Scrap, Inc. for all amounts due and owing under the Second Panhandle Note, in

B SCP01 1447312 v3
1039341-000731

an amount not less than $702,073.72, together with and including, without limitation, interest accruing at the default rate pursuant to the terms of the Loan Documents, and all attorneys' fees and court costs incurred by Lender in enforcing its rights under Loan Documents, and all other legal and equitable relief the court deems proper and just.

## Count III - Breach of Guaranty Agreements - Joseph T. Donovan

62.    Lender incorporates by reference the allegations set forth above as if set forth fully herein.

63.    Joseph T. Donovan executed the SpecAlloy Commercial Guaranties, the Second SpecAlloy Commercial Guaranty, the Third SpecAlloy Commercial Guaranties, the Panhandle Commercial Guaranties, and the Second Panhandle Commercial Guaranties wherein he guaranteed to Lender the full and prompt payment of all obligations due and owing under the Loan Documents.

64.    Lender is the holder of the guaranty agreements and is entitled to enforce the guaranty agreements.

65.    Joseph T. Donovan has breached his obligations under the guaranty agreements by failing to pay Lender the full amount due under the Third SpecAlloy Loan and the Second Panhandle Iron Loan.

66.    As of October 21, 2015, Joseph T. Donovan owes Lender $3,721,661.74. This debt consists of $3,019,588.02 under the Third SpecAlloy

Loan and $702,073.72 under the Second Panhandle Iron Loan.

67.     Pursuant to the terms of the guaranty agreements, Joseph T. Donovan is obligated to pay Lender its reasonable attorneys' fees and costs incurred in enforcing Lender's rights under the Loan Documents.

**WHEREFORE,** Lender hereby demands judgment against Joseph T. Donovan, jointly and severally with SpecAlloy and Panhandle Iron, for all amounts due and owing under the Loan Documents, in an amount not less than $3,721,661.74, together with and including, without limitation, interest accruing at the default rate pursuant to the terms of the Loan Documents, and all attorneys' fees and court costs incurred by Lender in enforcing its rights under the guaranty agreements and Loan Documents, and all other legal and equitable relief the court deems proper and just.

### Count IV - Breach of Guaranty Agreements - Panhandle Rocky Mountain Converter Recycling, LLC, Panhandle Converter & Core, LLC, Urban Mining, LLC, Panhandle Iron & Scrap, Inc., Panhandle-Midwest Converter Recycling, LLC

68.     Lender incorporates by reference the allegations set forth above as if set forth fully herein.

69.     Panhandle Rocky Mountain Converter Recycling, LLC, Panhandle Converter & Core, LLC, Urban Mining, LLC, Panhandle Iron & Scrap, Inc., and Panhandle-Midwest Converter Recycling, LLC executed the Third SpecAlloy Commercial Guaranties, wherein they guaranteed to Lender the full and prompt

payment of all obligations due and owing under the Third SpecAlloy Loan.

70.  Lender is the holder of the Third SpecAlloy Commercial Guaranties and is entitled to enforce the guaranty agreements.

71.  Panhandle Rocky Mountain Converter Recycling, LLC, Panhandle Converter & Core, LLC, Urban Mining, LLC, Panhandle Iron & Scrap, Inc., and Panhandle-Midwest Converter Recycling, LLC  have breached their obligations under the guaranty agreements by failing to pay Lender the full amount due under the Third SpecAlloy Loan.

72.  As of October 21, 2015, Panhandle Rocky Mountain Converter Recycling, LLC, Panhandle Converter & Core, LLC, Urban Mining, LLC, Panhandle Iron & Scrap, Inc., and Panhandle-Midwest Converter Recycling, LLC owe Lender $3,019,588.02.

73.  Pursuant to the terms of the guaranty agreements, Panhandle Rocky Mountain Converter Recycling, LLC, Panhandle Converter & Core, LLC, Urban Mining, LLC, Panhandle Iron & Scrap, Inc., and Panhandle-Midwest Converter Recycling, LLC are obligated to pay Lender its reasonable attorneys' fees and costs incurred in enforcing Lender's rights under the Loan Documents.

**WHEREFORE,** Lender hereby demands judgment against Panhandle Rocky Mountain Converter Recycling, LLC, Panhandle Converter & Core, LLC, Urban Mining, LLC, Panhandle Iron & Scrap, Inc., and Panhandle-Midwest

B SCP01 1447312 v3
1039341-000731

Converter Recycling, LLC, jointly and severally with SpecAlloy, for all amounts due and owing under the Loan Documents, in an amount not less than $3,019,588.02, together with and including, without limitation, interest accruing at the default rate pursuant to the terms of the Loan Documents, and all attorneys' fees and court costs incurred by Lender in enforcing its rights under the guaranty agreements and Loan Documents, and all other legal and equitable relief the court deems proper and just.

### Count V - Breach of Guaranty Agreements - SpecAlloy

74.    Lender incorporates by reference the allegations set forth above as if set forth fully herein.

75.    SpecAlloy executed the Panhandle Commercial Guaranties and the Second Panhandle Commercial Guaranties wherein it guaranteed to Lender the full and prompt payment of all obligations due and owing under the Original Panhandle Iron Loan and the Second Panhandle Iron Loan.

76.    Lender is the holder of the Panhandle Commercial Guaranties and Second Panhandle Commercial Guaranties, and is entitled to enforce the guaranty agreements.

77.    SpecAlloy has breached its obligations under the guaranty agreements by failing to pay Lender the full amount due under the Second Panhandle Iron Loan.

78.   As of October 21, 2015, SpecAlloy owes Lender $702,073.72.

79.   Pursuant to the terms of the guaranty agreements, SpecAlloy is obligated to pay Lender its reasonable attorneys' fees and costs incurred in enforcing Lender's rights under the Loan Documents.

**WHEREFORE,** Lender hereby demands judgment against SpecAlloy, jointly and severally with Panhandle Iron, for all amounts due and owing under the Loan Documents, in an amount not less than $702,073.72, together with and including, without limitation, interest accruing at the default rate pursuant to the terms of the Loan Documents, and all attorneys' fees and court costs incurred by Lender in enforcing its rights under the Loan Documents, and all other legal and equitable relief the court deems proper and just.

### Count VI - Replevin - SpecAlloy

80.   Lender incorporates by reference the allegations set forth above as if set forth fully herein.

81.   SpecAlloy is in possession of the SpecAlloy Collateral that is subject to Lender's security interest.

82.   SpecAlloy has defaulted on its payment obligations to Lender under the Third SpecAlloy Note.

83.   SpecAlloy has failed and refused to permit Lender to take possession of the SpecAlloy Collateral.

B SCP01 1447312 v3
1039341-000731

84. Lender is entitled to the reasonable value for the use of the SpecAlloy Collateral during its wrongful detention by SpecAlloy and from the date hereof.

**WHEREFORE,** Lender hereby demands judgment against SpecAlloy for the recovery of the SpecAlloy Collateral and damages for the reasonable value for the use thereof, and for all compensatory damages it incurred, plus interest, costs, collection expenses, and attorneys' fees incurred by Lender in enforcing its rights under the Loan Documents, and all other legal and equitable relief the court deems proper and just.

### Count VII - Replevin - Panhandle Iron & Scrap

85. Lender incorporates by reference the allegations set forth above as if set forth fully herein.

86. Panhandle Iron is in possession of the Panhandle Iron Collateral that is subject to Lender's security interest.

87. Panhandle Iron has defaulted on its payment obligations to Lender under the Second Panhandle Iron Note.

88. Panhandle Iron has failed and refused to permit Lender to take possession of the Panhandle Iron Collateral.

89. Lender is entitled to the reasonable value for the use of the Panhandle Iron Collateral during its wrongful detention by Panhandle Iron and from the date hereof.

B SCP01 1447312 v3
1039341-000731

**WHEREFORE,** Lender hereby demands judgment against Panhandle Iron for the recovery of the Panhandle Iron Collateral and damages for the reasonable value for the use thereof, and for all compensatory damages it incurred, plus interest, costs, collection expenses, and attorneys' fees incurred by Lender in enforcing its rights under the Loan Documents, and all other legal and equitable relief the court deems proper and just.

Respectfully Submitted,

W. PATTON HAHN
ERIC L. PRUITT
SAMUEL C. PIERCE
Attorneys for Wells Fargo Bank, National Association

OF COUNSEL:

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
420 20th Street North
1400 Wells Fargo Tower
Birmingham, Alabama 35203
Telephone (205) 328-0480
Facsimile (205) 322-8007
phahn@bakerdonelson.com
epruitt@bakerdonelson.com

B SCP01 1447312 v3
1039341-000731

## DEFENDANTS TO BE SERVED VIA CERTIFIED MAIL AS FOLLOWS:

SpecAlloy Corporation
Attn: Harry Grier & Joseph T. Donovan
3201 Ross Clark Circle
Dothan, Alabama 36303

Panhandle Iron & Scrap, Inc.
Attn: Lorrie M. Parker & Joseph T. Donovan
500 Office Park Drive
Suite 100
Birmingham, Alabama 35223

Joseph T. Donovan
868 Murray Road
Dothan, Alabama 36303

Panhandle Rocky Mountain Converter Recycling, LLC
Attn: Lorrie M. Parker & Joseph T. Donovan
500 Office Park Drive
Suite 100
Birmingham, Alabama 35223

Urban Mining, LLC
Attn: Lorrie M. Parker & Joseph T. Donovan
500 Office Park Drive
Suite 100
Birmingham, Alabama 35223

Panhandle-Midwest Converter Recycling, LLC
Attn: Lorrie M. Parker & Joseph T. Donovan
500 Office Park Drive
Suite 100
Birmingham, Alabama 35223

Panhandle Converter & Core, LLC
Attn: Lorrie M. Parker & Michael Hronchek
500 Office Park Drive
Suite 100
Birmingham, Alabama 35223

B SCP01 1447312 v3
1039341-000731